UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-78-GWU

ROBERT HAROLD MCMILLIAN,                                   PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

Robert McMillian brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

      Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that McMillian, a 50-year-old former electrician and scoop operator with a "limited" education, suffered from impairments related to degenerative disc disease of the lumbar spine, insulin dependent diabetes mellitus, chronic obstructive pulmonary disease and possible coal worker's pneumoconiosis. (Tr. 16, 21). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 19, 21). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 21-22). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert James Miller included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as an inability to more than frequently climb, balance, stoop, kneel, crouch or crawl and (2) a need to avoid concentrated exposure to pulmonary irritants. (Tr. 49-50). In response, Miller identified a significant number of jobs in the national economy which could still be performed.

(Tr. 50). The ALJ later added a need to avoid concentrated exposure to temperature extremes or excessive humidity levels and the witness indicated that the aforementioned job base would not be reduced. (Tr. 50-51). Therefore, assuming that the vocational factors considered by Miller fairly characterized McMillian's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. The only restriction indicated by Dr. Kirpal Sidhu, a treating physician, was that McMillian should not lift more than 20 pounds. (Tr. 354). The physical factors of the hypothetical question were compatible with this opinion. As a treating source, Dr. Sidhu's opinion was entitled to superior weight. Dr. Frank Pennington (Tr. 343-350) and Dr. Robert Doster (Tr. 364-371) each opined that the plaintiff could perform a limited range of medium level exertion, restricted by a need to avoid concentrated exposure to pulmonary irritants. The ALJ's findings were also consistent with these opinions. These reports provide substantial evidence to support the administrative decision.

McMillian asserts that the ALJ erred in failing to give controlling weight to the opinions of Dr. Rogelio Uy and Dr. P. D. Patel. Dr. Uy was a treating source who treated the plaintiff for a number of ailments including his diabetes mellitus, back strain and breathing problems. (Tr. 289-335). However, Dr. Uy did not identify the existence of more severe physical restrictions than those found by the ALJ and, so,

his opinion is not contrary to the ALJ's findings. Dr. Patel identified the existence of very severe physical restrictions on a Physical Ability to do Work-Related Activities form. (Tr. 393-395). However, Dr. Patel was a one-time examiner whose opinion was not entitled to controlling weight and it was outweighed by the opinion of Dr. Sidhu. Therefore, the court finds no error.

McMillian also asserts that the ALJ erred by failing to include an adequate explanation of his diagnosed pulmonary condition. The hypothetical question included a need to avoid exposure to pulmonary irritants. This restriction clearly addresses the claimant's pulmonary condition. Dr. Patel was the only physician of record to identify more severe physical limitations and the court found that his restrictions were properly rejected. The undersigned notes that the Sixth Circuit Court of Appeals found that hypothetical questions are not required to contain a list of the claimant's medical conditions. Webb v. Commissioner of Social Security, 368 F.3d 629, 631 (6th Cir. 2004). Therefore, the court must reject this argument.

The ALJ determined that McMillian did not suffer from a "severe" mental impairment. (Tr. 17). This finding is well supported by the record. Psychologist Roy Nevils examined the plaintiff and diagnosed an adjustment disorder with depressed mood and possible borderline intellectual functioning. (Tr. 376). The claimant's Global Assessment of Functioning (GAF) was rated at 75. (Id.). Such a GAF suggests the existence of only transient psychological symptoms with no more than slight impairment of mental functioning according to the American

Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. The examiner imposed no specific mental limitations. (Tr. 372-377).

McMillian was also examined by Dr. David Shraberg who diagnosed an adjustment disorder of adult life and a mood disorder. (Tr. 781). The plaintiff's mental status examination was noted to have been within normal limits. (Tr. 780). Dr. Shraberg indicated that the claimant did not suffer from a mental impairment which would interfere with his ability to perform work activity. (Tr. 781). Thus, this opinion also supports the administrative decision.

McMillian was seen at the Cloverfork Clinic for a number of ailments. (Tr. 355-363). Anxiety and depression were diagnosed. (Tr. 357). However, the clinic staff never identified the existence of specific mental restrictions. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the treatment notes from Cloverfork do not support the plaintiff's disability claim.

McMillian was hospitalized at Appalachian Regional Hospital in September of 2009 with suicidal ideation. (Tr. 812). His mood disturbance was noted to be connected to the Social Security Administration's decision to deny him disability benefits. (Tr. 820). His mood improved and he was discharged from the hospital with no specific mental limitations being imposed. (Tr. 825).

Following discharge from the hospital, McMillian sought treatment for his mental problems at the Cumberland River Comprehensive Care Center. (Tr. 874-898). The plaintiff was diagnosed as suffering from a single episode of major depression and a mood disorder. (Tr. 883). The claimant's ability to function was rated as "slightly low" in daily living/personal care with no functional impairment reported in societal/role functioning or interpersonal functioning. (Tr. 894). Thus, this report also does not indicate the existence of a significant mental impairment.

Psychologist George Davis reviewed the record and opined that McMillian's mental problems were not "severe." (Tr. 378). This opinion also supports the administrative decision.

Dr. Patel diagnosed a mood disorder and identified a number of extremely severe mental limitations. (Tr. 396-398, 401). The ALJ rejected Dr. Patel's mental limitations. (Tr. 17). The court finds this action appropriate. Dr. Patel was a one-time examiner whose opinion was offset by those of Dr. Nevils and Dr. Shraberg, who also examined the plaintiff. Therefore, the undersigned finds that the ALJ dealt properly with the evidence of record relating to the claimant's mental condition.

Finally, McMillian argues that the ALJ erred by failing to provide specific rationale for rejecting his testimony. However, the court notes that the ALJ actually identified a number of reasons for this finding. Despite the plaintiff's claims of disabling back pain, he testified that he no longer was seeking any form of medical treatment, had never worn a back brace, and stopped taking medication for one

11

year. (Tr. 19). The record indicated that the claimant had continued to look for work and received unemployment benefits during the same period he was alleging disabled status. (Tr. 20). Despite his allegations of being financially unable to afford medical care, the ALJ noted that he was able to buy chewing tobacco. (Id.). The medical record indicated a history of non-compliance with his diabetic diet. Therefore, the court finds that the ALJ cited a number of reasons for the credibility determination and, so, must reject McMillian's argument.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 15th day of December, 2010.

**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**